IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAUREN S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-cv-165-RJD[1] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for DIB and SSI on September 8, 2020, alleging she became disabled on October 13, 2015; she later amended the onset date to April 1, 2019.  Tr. 53, 417.  Defendant denied her claims on February 10, 2021 and again upon reconsideration on June 4, 2021.  Tr. 53. Plaintiff filed a timely request for hearing, which was held on March 29, 2022.  Tr. 53.  ALJ Robert Luetkenhaus denied her application on April 13, 2022.  Tr. 68.  The Appeals Council denied review.  Tr. 6.

---

[1] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties. Doc. 10.

**Issue Raised by Plaintiff**

Plaintiff contends that the ALJ erred in making the residual functional capacity ("RFC") determination.

**Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[2] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work?  20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled.  A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4.  Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to

---

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Importantly, this Court's scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the required five-step analytical framework. He determined that Plaintiff has not engaged in substantial gainful activity since April 1, 2019. Tr. 56.

The ALJ found that Plaintiff has severe impairments of "fibromyalgia, morbid obesity, major depression, bipolar disorder, attention-deficit/hyperactive disorder, and osteoarthritis." Tr. 56. However, he found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." Tr. 57. He determined that she had a moderate limitation in "understanding, remembering, or applying information" and a

moderate limitation in "concentration, persistence, pace."  Tr. 57, 58.

The ALJ found that Plaintiff has the residual functional capacity to:

> Perform light work…except she can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs.  The claimant can occasionally balance, stoop, knee, crouch and crawl.  She can frequently handle and finger using her bilateral upper extremities.  The claimant must avoid concentrated exposure to extreme cold, heat, wetness, humidity, vibration, and hazards such as moving machinery and unprotected heights.  She must avoid concentrated exposure to more than moderate noise, defined as level 3 in the Special Characteristics of Occupations (SCO).   She can only perform jobs that can be learned in 30 days or less and can make only simple work-related decisions.  The claimant must be allowed to use a cane held in her right, dominant [] hand for any ambulation with the free hand available for lifting and carrying that may be necessary.

(Tr. 59).

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff is unable to perform past relevant work yet concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 67.

### The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Order.  The following summary of the record is tailored to Plaintiff's arguments.

**1.     Agency Forms**

Plaintiff was born in 1986 and was 33 years old on April 1, 2019.  Tr. 427.  She was five feet nine inches tall and weighed 300 pounds.  Tr. 409.

Plaintiff completed a function report in September 2020 in which she represented that she was in constant pain and any time she did any type of physical activity (lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing), the pain immediately became worse.  Tr. 442, 447.. She wrote that "[i]t's hard for me to walk, bend, stoop, and nearly impossible for me to

lift anything." Tr. 442. She was only awake for approximately 12 hours a day, and her parents did all household chores for her. Tr. 443-44. She could feed herself, but sometimes needed assistance with bathing and grooming. Tr. 443. She could only bathe 1x a week because of pain. Tr. 443. She used a cane or walker "as needed, maybe 5 or more times a week." Tr. 448. After taking her ADD medications, she could pay attention for approximately one hour. Tr. 447.

Plaintiff completed another function report in April 2021. Tr. 460. She reported that she was "in an extreme amount of pain that started in April 2019, and has not stopped yet. The pain is from my head to my toes and no matter how much medicine I take, I am still in so much pain." Tr. 460. The pain caused her to be in a constant state of depression and to cry frequently. Tr. 460. She reported that her "days are spent taking meds that make me tired from the time I get out of bed till I go back." Tr. 461. Getting dressed was extremely painful for her and took "a lot longer than it used to." Tr. 461. Her parents and sister did all household chores for her and helped her with shopping and grooming. Tr. 461-63. She used a "walker to walk about 200 feet at a time" and could "only lift about 10 lbs." Tr. 465. She could only pay attention for "a couple minutes." Tr. 465.

2. **Evidentiary Hearing**

Plaintiff was represented by counsel at the evidentiary hearing on March 29, 2022. Tr. 152. She testified that she "technically" lived in a house by herself, but someone stayed with her every night or she stayed at her parents' house. Tr. 161. Her mom and dad did most of her household chores for her; she was able to wash her own dishes and clean her toilets, sinks, and countertops. Tr. 161, 168. She drives approximately 2-3 times a week to her parents' house. Tr. 162.

Plaintiff testified that she has been "at a level ten out of ten pain every day for seven years now….from my head to my toes and every single pore…on my body feels like glass is coming out of it at all times."  Tr. 163-64.  In the month prior to the hearing, Plaintiff was diagnosed with Morgellons disease, but her doctor told her the diagnosis "has to be confirmed by my dermatologist…but basically, he is telling me all of my ailments are related to this."  Tr. 164.  There is also "stuff just almost poring [sic] out of my skin that looks like clay and sand."  Tr. 165.  She experienced symptoms of bipolar disorder, major depression, ADHD, and borderline personality disorder.  Tr. 165.  She had "zero" energy level, sometimes sleeping "five days in a row."  Tr. 171.  She had "terrible" concentration and attention, which caused her to "start about 400 projects a day and don't finish any of them."  Tr. 172.

Plaintiff also testified that she could "maybe" walk for two minutes at a time on a flat surface.  Tr. 166.  She could stand for thirty seconds before falling because her feet "go numb"; she later testified that she could stand for "maybe" five minutes at a time to do dishes  Tr. 166, 172.  She fell at least 10 times a day.  Tr. 166.  A doctor had ordered a cane and a walker for her and she used one or the other every day.  Tr. 169.  On her better days, she would just use the cane with her right hand.  Tr. 169.  She fell less using the walker.  Tr. 170.  She could sit for a "couple minutes at a time."  Tr. 166.  Throughout her waking hours, she was "constantly turning and repositioning herself."  Tr. 167.  She could carry "about four pounds."  Tr. 167.

Plaintiff explained that she had "little to no sensation, except pain, in my left forearm, wrist and hand."  Tr. 170.  She had "problems grabbing small things or gripping anything really."  Tr. 171.  She also had tremors in her left hand.  Tr. 171.  She experienced "chronic migraines…at least 15-20 a month" that last "for days or weeks, sometimes months" which cause nausea,

vomiting, and vision loss.  Tr. 173.

Vocational expert Susan Shea Testified.  Tr. 155.  The ALJ posed the following hypothetical:

> …a younger individual who has completed the equivalent of 12 grades of education who has no past relevant work experience….[has] the ability to do light work, but …can only occasionally climb ramps and stairs, can never climb ladders, ropes and scaffolds, can occasionally balance, stoop, kneel, crouch and crawl….can frequently handle and finger using the bilateral upper extremities…must avoid concentrated exposure to extreme cold, heat, wetness, humidity and [moderate] noise…must avoid concentrated exposure to vibration and hazards such as moving machinery and unprotected heights.

Tr. 175-76.  Ms. Shea testified that there would be work in the national economy for this individual to do, including sedentary work.  Tr. 176-77.  If the individual must use a cane in the right dominant hand, there would be sedentary work for the individual as long as she could reach or carry up to ten pounds or less with the other hand.  Tr. 177.  Ms. Shea further explained that the sedentary jobs would involve tasks that can be learned in 30 days or less and involve only "simple work-related decisions."  Tr. 178.  If the individual had to use a walker, all competitive employment that was not modified to some degree" would be eliminated.  Tr. 178.  If the individual was absent from work three times a month on a regular basis, all competitive employment would be eliminated.  Tr. 178.  If the individual was "off task" at least 20 percent of the work day, she would be terminated.  Tr. 179.

### 3. Relevant Medical Records

Plaintiff saw her primary care physician, Dr. Lowell Sensintaffar, on April 1, 2019.  Tr. 940.  He listed "fibromyalgia" as the purpose of the visit.  Tr. 940.  Plaintiff reported that her pain was 8/10 and she was "having difficulty moving around and is painful to even breathe."  Tr.

940, 943. Dr. Sensintaffar increased her pain medications and "strongly encouraged that she increase her activity…[and] to speak with her psychiatrist." Tr. 943. He also ordered amitriptyline, 25 mg nightly. Tr. 943. He noted that "she does very well on Cymbalta…would encourage that they try to control her depression and manage her fibromyalgia with [Cymbalta]." Tr. 943. Dr. Sensintaffar saw her again 10 days later for "pain all over body." Tr. 945. She had just restarted Cymbalta, but had not started the amitriptyline. Tr. 945. He noted that she had normal gait. Tr. 948. Dr. Sensintaffar advised her to start taking the amitriptyline and increase activity. Tr. 949. He referred her to pain management. Tr. 949. Dr. Sensintaffar saw Plaintiff regularly and continued adjusting her medication to treat her pain and depressions. In July 2019, Plaintiff complained of worsening migraine headaches. Tr. 967-968. At Plaintiff's next two visits, Dr. Sensintaffar noted that she was using a "four point rolling walker to get around." Tr. 974, 979.

In November 2019 Plaintiff reported to Dr. Sensintaffar that she had fallen "several times over the past 6 months", including one fall on to her outstretched left hand. Tr. 994, 995. She complained of pain over the ulnar aspect of her left wrist. Tr. 994. Dr. Sensintaffar assessed her as having a left wrist sprain and prescribed a splint. Tr. 998. He noted "if no improvement over the next 2-3 weeks, consider advanced imaging such as MRI." Tr. 998.

Plaintiff saw a physician in Plastic and Reconstructive Surgery in June 2020 at Saint Louis University Hospital. Tr. 1152. Plaintiff had previously undergone resection surgery in 2016 on her left wrist following a potassium IV burn. Tr. 1149. At the June 2020 visit, the physician noted that Plaintiff was seen "in follow-up of treatment of scarring and radial sensory problems around her left wrist region. The pain is appreciably better and she is overall doing well but she

feels that she's had some tightness develop….and some weakness in her hand." Tr. 1152. On exam, Plaintiff lacked "full abduction of her left thumb." Tr. 1152. The physician's assessment was "tissue tightness of left wrist after prior…ulnar nerve neuropathy." The doctor ordered a nerve study and Plaintiff was shown stretching exercises. Tr. 1152. The record reflects the study was never performed.

At most of Plaintiff's visits with Dr. Sensintaffar, he noted that Plaintiff had normal gait (even on the occasion she presented with a walker) with diffuse tenderness throughout her muscles. Tr. 948, 953, 958, 963, 971, 977, 998, 1003, 1009, 1015, 1253, 1263, 1268, 1408. In November 2020, Dr. Sensintaffar noted that he saw Plaintiff for "chronic lower back pain, opioid dependency….in light of her escalating pain symptomology, I believe she likely has a component of opiod-induced hyperalgesia[3] as well as possible central pain sensitization syndrome." Tr. 1258.

Dr. Sensintaffar saw Plaintiff in March 2021 and noted that she was seen for "chronic pain" and "she has been evaluated by rheumatology recently…many labs have been performed but none of them showing definitive rheumatologic disease." Tr. 1265. In October 2021, Dr. Sensintaffar noted that "over the past couple of months she had had exacerbation of her mid lower back pain after straining he back lifting her father's large dog in the back of a truck." Tr. 1404. In December 2021, Dr. Sensintaffar noted that she "has chronic back pain and has been scheduled to start physical therapy. She has had several falls over the past couple of months because of weakness and debility." Tr. 1382. She was using a "wheeled walker" and she stood "hunched over with support of walker." Tr. 1385. Her blood pressure was "inadequate[ly] control[led]",

---

[3] "'Hyperalgesia' is an increased sensation of pain." https://www.hss.edu/conditions_opioid-induced-hyperalgesia.asp (last accessed Mar. 9, 2024).

despite taking two medications for it.   Tr. 1386.

Plaintiff regularly saw a psychiatrist, Dr. Christopher Johnson for moderate recurrent major depression and moderate depressed bipolar 1 disorder.   Tr.764-808, 1026-1074, 1488-1552.   At every visit in 2019 and in January-August 2020, Dr. Johnson noted that Plaintiff's attention was decreased.   Tr. 767, 772, 777, 781, 786, 790, 794, 799, 803, 806, 1044, 1049, 1054, 1058, 1063, 1067, 1072.   On July 17, 2020, Dr. Johnson noted "now that she is off of prednisone she wants to try Adderall again, which she responded to well in the past. She does note a history of ADHD and says its been worse for five years off of meds, notes poor concentration, difficulty finishing tasks, and forgetfulness."  Dr. Johnson ordered Adderall, 20 milligrams to be taken twice daily for ADHD, predominantly inattentive type.

In September 2020, Dr. Johnson noted that Plaintiff was "feeling 'pretty good'….her focus is improved on the Adderall.   She tolerates it well."  Tr. 1030.   The remainder of Plaintiff's records (prior to the March 2022 hearing) reflect that Dr. Johnson never changed that prescription. Tr. 1272, 1281, 1286, 1296, 1301, 1499, 1510, 1538.   At visits from November 13, 2020 through December 17, 2021, Dr. Johnson noted that she was either stable or "doing well" with her medications and that her concentration/attention was "unchanged."  Tr. 1281, 1276, 1286, 1291, 1286, 1300, 1493, 1498, 1499, 1504, 1509, 1510, 1515, 1520, 1521, 1525, 1526, 1531, 1536, 1537, 1541, 1542.

   4.   **Opinions by State agency physicians**

Wyatt Rousseau, M.D., opined that Plaintiff could occasionally lift and/or carry (including upward pulling) 20 pounds, and that she could frequently lift and/or carry (including upward pulling (10 pounds).   Tr. 222.   Regarding her left upper extremity, however, he found that she

was limited to two pounds pushing or pulling occasionally.  Tr. 223.  He also found that she could only occasionally perform fine and gross motor manipulation with her left hand "due to left wrist, thumb, index finger injury/scarring."  Tr. 224.  Another state agency physician, Dr. Ranga Reddy, generally concurred with Dr. Rousseau's opinions.  Tr. 261-264.

## Analysis

Plaintiff claims that the ALJ erred in determining her residual functional capacity ("RFC") by failing to consider Plaintiff's reliance on a cane and use of a wheeled walker to ambulate. Plaintiff further claims that RFC does not account for her moderate limitation(s) in concentrating, persisting, or maintaining pace.

**Use of cane and wheeled walker to ambulate**

The ALJ's decision and reasoning must "build an accurate and logical bridge" from the evidence to the RFC.  *Jarnutowski v. Kijakazi*, 48 4th 769, 774 (7th Cir. 2022).  The RFC is "the most an individual can work despite his or her limitations or restrictions."  *Id*. (internal citations and quotations omitted).  The ALJ found that Plaintiff's "fibromyalgia, morbid obesity, and osteoarthritis…allot[ted] for the use of a cane."  Tr. 66.  The ALJ included in the RFC that Plaintiff "must be allowed to use a cane held in her right, dominant [] hand for any ambulation" but also included that Plaintiff could perform light work.  The vocational expert testified that the use of a cane in Plaintiff's right, dominant hand would eliminate light work.  Tr. 177. The Court agrees with Plaintiff that there is not an "accurate and logical bridge" between these two findings (that Plaintiff can perform light work but also must be allowed to use a cane in her right, dominant hand) and the evidence (specifically, that use of a cane eliminates light work).

Plaintiff also contends that the ALJ's finding that she "must be allowed to use a cane held

in her right hand" eliminated the possibility of sedentary work because of the state agency physicians' finding that she was limited to "occasionally handling and fingering with the left upper extremity." This argument is simply an invitation to reweigh evidence, which the Court cannot do. *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019). The ALJ explained (with citations to the records) why he discounted Dr. Reddy's opinion of the purported limitations in Plaintiff's left upper extremity. Tr. 65.

Finally, Plaintiff argues that the ALJ failed to "properly evaluate Plaintiff's use of a wheeled walker to ambulate." This argument is another invitation to reweigh evidence. The ALJ cited to the medical records that reflected Plaintiff had a normal gait and/or was not using a walker, or that there was no physical evidence of a need for a walker. Tr. 57, 62.

**Concentration, persistence, and pace**

Plaintiff contends that the RFC does not account for her moderate limitations in concentration, persistence, and pace ("CPP"). At step three, the ALJ found that "with regard to concentrating, persisting, or maintaining pace, [Plaintiff] has a moderate limitation." In determining the RFC at step four, however, the ALJ merely stated that Plaintiff could "can make only simple work-related decisions." The Seventh Circuit has repeatedly held that similar language in the RFC does not, by itself, account for moderate limitations in concentration, persistence and pace because "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Lothridge v. Saul*, 984 F.3d 1227, 1233-34 (7th Cir. 2021) (internal citations and quotations omitted). After finding that Plaintiff had a moderate limitation in CPP, the ALJ failed to include a corresponding limitation in the RFC. This error requires remand. *Id*, p. 1235.

In response to this argument, the Commissioner contends that Plaintiff is arguing that the language in Plaintiff's RFC can *never* be sufficient and "the inquiry of whether RFC limitations is case specific." The Court does not believe Plaintiff is making that argument, but regardless, the Commissioner correctly notes that the mere mention of "simple decisions" could be appropriate to address a moderate limitation in CPP if that is what the evidence indicates is warranted in a particular case. *See Lothridge*, 984 F.3d at 1223 (no "magic words" required). Here, however, the ALJ did not explain why Plaintiff's moderate limitations in concentration, persistence, and pace could be accommodated with simple tasks. The Commissioner then points to medical records that reflect Plaintiff's concentration issues were alleviated by her medicine. The ALJ considered those records, but nonetheless found that Plaintiff had a moderate limitation in concentration, persistence, and pace based upon her testimony. Tr. 58. Because he made that finding based on her testimony, the ALJ was required to account for Plaintiff's inability to "concentrate well enough to work for a sustained period" in the RFC. *Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019).

## Conclusion

After careful review of the record as a whole, the Court agrees that the ALJ erred in formulating Plaintiff's residual functional capacity because he found that she could perform light work but must also be able to use a cane in her right, dominant hand. The ALJ also erred by failing to account for Plaintiff's moderate limitations in concentration, persistence, and pace in the RFC. The Commissioner's final decision denying Plaintiff's application for a period of disability and disability insurance benefits is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this Order.

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: March 21, 2024**

                  s/ *Reona J. Daly*
                  **Hon. Reona J. Daly**
                  **United States Magistrate Judge**